UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KUAN JIANG, 046-852-729,

              Petitioner,

        -v-                                      15-CV-48-JTC

ERIC H. HOLDER, Jr., Attorney General
of the United States,

WALTER M. INGRAM, Office of Enforcement
and Removal Operations Post Order Custody
Review Unit Chief, Washington DC Field
Office,

MICHAEL PHILIPS, Field Office Director
Office of Enforcement and Removal
Operations, Buffalo Field Office,
Department of Homeland Security
Bureau of Immigration and Customs
Enforcement,

SEAN CALLAGHER, Designated Field Office
Director, ERO, Buffalo Federal Detention
Facility,

TODD TRYON, Assistant Field Office Director
Buffalo Federal Detention Facility,

MR. SCHRADER, Supervisory Detention and
Deportation Officer Buffalo Federal
Detention Facility, and

Officer MR. CRANE, Deportation Officer
Buffalo Federal Detention Facility,

              Respondents.

_____

## INTRODUCTION

Petitioner Kuan Jiang, an alien under a final immigration order of removal from the United States, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 seeking release from detention in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (collectively, "DHS"), pending his removal.  *See* Item 1.  As directed by this court's order entered January 28, 2015 (Item 2), respondent[1] has submitted an answer and return (Item 4), along with an accompanying memorandum of law (Item 5), in opposition to the petition.  Despite ample opportunity to do so, petitioner has not filed a reply.[2]

For the reasons that follow, the petition is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

DHS records on file with the court show that petitioner, a native and citizen of the People's Republic of China, was admitted to the United States at Anchorage, Alaska, on or about September 25, 1998, as a lawful permanent resident.  *See* Item 4-2 (Exh. A, attached to Declaration of DHS Deportation Officer Juanita Payan, Item 4-1), pp. 2, 25.

---

[1]The only proper respondent in this proceeding is Todd Tryon, Assistant Field Office Director, Immigration and Customs Enforcement, Buffalo, New York Office, and Director of the Buffalo Federal Detention Facility, as he is "the person who has custody over [the petitioner]."  28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Rumsfeld v. Padilla*, 542 U.S. 426, 434–35 (2004).

[2]On April 20, 2015, petitioner filed with the court a motion seeking an order to prevent DHS from transferring him from the Buffalo Federal Detention facility in Batavia, New York, to Etowah County Jail in Gadsden, Alabama, pending the court's consideration of his petition for habeas corpus relief.  *See* Item 6.  This motion is denied for lack of jurisdiction.  *See Guangzu Zheng v. Decker*, 2014 WL 7190993, at *15-16 (S.D.N.Y. Dec. 12, 2014) (district court lacks jurisdiction to review Attorney General's discretionary administrative determination of appropriate place of aliens' detention pending removal); *Avramenkov v. I.N.S.*, 99 F. Supp. 2d 210, 2013 (D.Conn. 2000) (district court lacks jurisdiction to prevent INS from transferring detainee from one federal detention facility to another).

On February 25, 2008, petitioner filed with U.S. Citizenship and Immigration Services ("USCIS") an Application for Naturalization (Form N-400) which was denied by USCIS on March 13, 2009.  *Id.* at 2.

Petitioner has been convicted of the following criminal offenses while a resident of the United States:

a.      On or about January 27, 2009, petitioner was convicted, in Queens County, New York Criminal Court, of Criminal Possession of a Controlled Substance in the 7th Degree, to wit:  heroin, in violation of New York State Penal Law Section 220.03.  He was granted a conditional discharge.

b.      On or about March 16, 2011, petitioner was convicted, in the Supreme Court of the State of New York, County of New York, of Robbery in the 2nd Degree: displays what appears to be a firearm, in violation of New York State Penal Law Section 160.10(2)(b).  He was sentenced to a 42 month term of incarceration.

*Id.* at 2, 25.

On February 28, 2012, petitioner was encountered at the Mid-State Correctional Facility in Marcy, New York, by officials of the DHS Criminal Alien Program.  *Id.* at 2, 26-27. Upon verification of petitioner's immigration status, an immigration detainer was lodged against him at the correctional facility.  *Id.* at 28.

Petitioner was placed in immigration removal proceedings by a Notice to Appear ("NTA"), served on March 21, 2012, which charged him with being subject to removal from the United States, pursuant to Immigration and Nationality Act ("INA") § 237(a)(2)(B)(i) (8 U.S.C. § 1227(a)(2)(B)(i)), as an alien who has been convicted of a controlled substance

offense; pursuant to INA § 237(a)(2)(A)(iii) (8 U.S.C. § 1227(a)(2)(A)(iii)), as an alien who has been convicted of an aggravated felony crime as defined in INA § 101(a)(43)(F) (8 U.S.C. § 1101(a)(43)(F)), a crime of violence; and pursuant to INA § 237(a)(2)(A)(iii) (8 U.S.C. § 1227(a)(2)(A)(iii)), as an alien who has been convicted of an aggravated felony crime as defined in INA § 101(a)(43)(G) (8 U.S.C. § 1101(a)(43)(G)), a law relating to a theft offense.  *Id.* at 23-25.

On August 21, 2012, Immigration Judge ("IJ") Roger F. Sagerman ordered petitioner removed from the United States to the People's Republic of China.  *Id.* at 31-32.  Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), and on December 5, 2012, the BIA dismissed the appeal.  *Id.* at 3, 29-30.

On May 20, 2014, petitioner was taken into DHS custody upon his release from the custody of the New York State Department of Corrections and Community Supervision ("DOCCS").  *Id.* at 2.

On May 21, 2014, DHS sent a presentation packet to the Consulate General of the People's Republic of China ("Consulate") in New York City, requesting that a travel document be issued for petitioner's removal.  *Id.* at 33-40.   According to DHS records submitted to the court in connection with the government's opposition to the present habeas corpus petition, DHS has instructed petitioner on several occasions to complete a Chinese Identity Verification Form and to provide further information and documentation in support of the request for a travel document, but he has not done so.  *See id.* at 3, 5, 8. Consequently, in July 2014, DHS served petitioner with repeated formal Warnings for Failure to Depart (Form I-229(a)), advising of actions he is required to take to assist in

obtaining a travel document for his removal; penalties under INA § 243 for conniving or conspiring to prevent or hamper his departure from the United States; and that pursuant to INA § 241(a)(1)(C) his failure to comply, or to provide sufficient evidence of his inability to comply, may result in the extension of the removal period and subject him to further detention. *See id.* at 19-22.

On August 6, 2014, DHS served petitioner with a Notice of Failure to Comply pursuant to 8 C.F.R. 241.4(g), formally advising him, among other things, that the removal period would be extended in his case due to his failure to provide the requested documentation and other information necessary for obtaining a travel document, or to otherwise comply with the obligation to assist in the removal process. *Id.* at 8-10. Petitioner was served with additional Form I-229(a) warnings on September 8, 2014, October 8, 2014, November 7, 2014, December 9, 2014 and January 12, 2015 (*id.* at 11-18), but he has failed to provide the information requested, and on December 10, 2014, he was served with a further Notice of Failure to Comply, advising that his removal period would remain in extended status and his detention would continue. *Id.* at 5-6.

In December 2014, in accordance with immigration regulations (*see* 8 C.F.R. § 241.4), DHS reviewed petitioner's custody status, and on December 29, 2014, petitioner was notified that DHS had determined to continue his detention, based upon the totality of available information indicating that he would be a threat to the community and a flight risk if he were to be released from custody.   Item 4-2, pp. 2-4.   Pursuant to § 241.4(g)(5)(iii), DHS is not obligated to conduct further custody reviews until petitioner has demonstrated compliance with the statutory obligations.

On January 15, 2015, petitioner filed this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2241 on the ground that his continued detention in post-removal-order custody is unlawful since it has exceeded the presumptively reasonable six-month period established under the due process standards set forth by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001). Upon full consideration of the matters set forth in the submissions on file, and for the reasons that follow, the petition is denied.

## DISCUSSION

Petitioner challenges his continued detention by way of habeas corpus review under 28 U.S.C. § 2241, which "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.' " *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (petition under § 2241 is the basic method for statutory and constitutional challenges to detention following order of removal). Matters pertaining to the detention of aliens pending the completion of immigration removal proceedings, and pending removal following the entry of a final order of removal, are governed by two separate provisions of the INA–respectively, INA § 236, which authorizes the arrest and detention of an alien on warrant pending a decision on whether the alien is to be removed from the United States, and INA § 241, which authorizes detention of aliens after the issuance of a final removal order. In this case, petitioner's detention at the time he filed his habeas petition was pursuant to INA § 241(a),

which authorizes detention of aliens after the issuance of a final removal order for a period of ninety days (the "removal period"), commencing on the latest of the following dates:

> (i)  The date the order of removal becomes administratively final.
> (ii)  If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Detention during the ninety-day removal period is mandatory.  *See* INA § 241(a)(2) ("During the removal period, the Attorney General *shall* detain the alien.").  The statute also authorizes the Attorney General to continue detention of criminal aliens–*i.e.*, aliens ordered removed due to conviction of a crime (like petitioner here)–beyond the expiration of the ninety-day removal period if it is determined that the alien "is a risk to the community or unlikely to comply with the order of removal …."  INA § 241(a)(6).[3]

The removal period may also be extended "if the alien fails or refuses to make a timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."  8 U.S.C. § 1231(a)(1)(C).

---

[3]INA § 241(a)(6) provides in full as follows:

An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2),or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

In considering whether aliens have satisfied their obligations under § 1231(a)(1)(C), courts look to whether they have undertaken overt actions to thwart removal, whether they can or have produced affidavits from friends and family to support their claims of nationality, whether they have requested travel documents from the country of intended removal, whether they have attempted to contact the country of intended removal's consulate, and/or whether they can or have provided the [DHS] with requested documents.

*Hydara v. Gonzales*, 2007 WL 2409664, *2–3 (D.Minn. Aug. 21, 2007), *quoted in Khaleque v. Department of Homeland Sec.*, 2009 WL 81318, at *2 (W.D.N.Y. Jan 9, 2009).   The immigration regulations provide further that, when the removal period is extended or suspended under § 1231(a)(1)(C), DHS will provide the alien with a Notice of Failure to Comply, and "[t]he removal period shall be extended until the alien demonstrates to the [DHS] that he or she has complied with the statutory obligations.   Once the alien has complied with his or her obligations under the law, the [DHS] shall have a reasonable period of time in order to effect the alien's removal."   8 C.F.R. § 241.4(g)(1)(ii); *see also* 8 C.F.R. § 241.4(g)(5)(ii) (detailing contents of Notice of Failure to Comply).   As already indicated, the regulations provide that during the period of "failure to comply" suspension, "[DHS] is not obligated to complete its scheduled custody reviews … until the alien has demonstrated compliance with the statutory obligations."   8 C.F.R. § 241.4(g)(5)(iii).

In this case, the ninety-day statutory removal period commenced on May 20, 2014, when petitioner was received into DHS custody upon his release from the custody of DOCCS.   *See* Item 4-1, ¶ 12; 8 U.S.C. § 1231(a)(1)(B)(iii).   As set forth above, DHS records indicate that petitioner has refused or otherwise failed to provide the information and documentation requested by the Chinese Consulate in order to complete the process for issuance of travel documents.   *See* Item 4-1, ¶¶ 14-15, 17-21.   As a result, DHS has served petitioner with several Warnings for Failure to Depart, advising him of his obligation

to assist in his removal and comply with the process, and warned of the consequences for failing to do so, *id.* at ¶¶ 16, 17, and on August 6, 2014, served petitioner with a Notice of Failure to Comply.  *Id.* at 19.  Under the authority outlined above, petitioner remains in "failure to comply" status, and his removal period has been extended, until he can demonstrate good faith compliance with the obligations under § 1231(a)(1)(C) and related regulations.  Based on the present record, the court cannot conclude that he has done so.

Moreover, even if the removal period had not been extended in this case, petitioner has failed to demonstrate that his continued detention by DHS is unlawful under the due process standards set forth in *Zadvydas*.  In that case, the Supreme Court was presented with the challenge of reconciling the INA's apparent authorization of indefinite detention of criminal aliens with the Fifth Amendment's prohibition against depriving a person of their liberty without due process.  The Court determined that INA § 241(a) authorizes detention after entry of an administratively final order of deportation or removal for a period that is "reasonably necessary" to accomplish the alien's removal from the United States. *Zadvydas*, 533 U.S. at 699-700.  Recognizing the practical necessity of setting a "presumptively reasonable" time within which to secure removal, the court adopted a period of six months "for the sake of uniform administration in the federal courts …."  *Id.* at 701.

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink.  This 6-month presumption, of course, does not mean that every alien not removed must be released after six months.  To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

To comply with the Supreme Court's ruling in *Zadvydas*, the Attorney General has promulgated regulations providing for review of the custody status of aliens who have been detained for more than six months after the issuance of a final order of removal.  Under these regulations, a detainee who has been in post-removal-order custody for more than six months may submit a written request for release to DHS Headquarters Post-order Detention Unit ("HQPDU") setting forth "the basis for the alien's belief that there is no significant likelihood that the alien will be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(d)(1).   The written request must include "information sufficient to establish his or her compliance with the obligation to effect his or her removal and to cooperate in the process of obtaining necessary travel documents."   8 C.F.R. § 241.13(d)(2).

In reviewing the request for release, the agency is required to consider "all the facts of the case including, but not limited to," the following:

> [T]he history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.  Where the Service is continuing its efforts to remove the alien, there is no presumptive period of time within which the alien's removal must be accomplished, but the prospects for the timeliness of removal must be reasonable under the circumstances.

8 C.F.R. § 241.13(f).

If the agency finds that the alien has met the burden of demonstrating good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future,

-10-

and that there are no special circumstances justifying continued detention, then it must order the detainee released.  8 C.F.R. § 241.13(g)(1).  However, the agency may impose certain conditions of release on the alien, such as requiring a bond, attendance in a rehabilitative program, or submission to a medical or psychiatric examination.  *See* 8 C.F.R. §§ 241.5(b), 241.13(h)(1); *see also Zadvydas*, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress to remove aliens, to subject them to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions.").

Thus, under *Zadvydas*, once the "presumptively reasonable" six-month period of detention has passed, the burden shifts to the alien detainee to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Zadvydas*, 533 U.S. at 701.  Only if the alien makes this showing does the burden shift back to the government, which "must respond with evidence sufficient to rebut" the alien's showing that there is no significant likelihood that he or she will be deported in the reasonably foreseeable future.  *Id.*; *see also Wang*, 320 F.3d at 146 ("reasonable foreseeability" test of *Zadvydas* "articulates the outer bounds of the Government's ability to detain aliens (other than those serving criminal sentences) without jeopardizing their due process rights.").

Upon review of the submissions on the present petition, the court finds that petitioner has failed to sustain his initial burden under *Zadvydas*.  The petition sets forth no factual basis to substantiate petitioner's belief that there is no significant likelihood he can be removed to the People's Republic of China in the reasonably foreseeable future.

As discussed above, DHS sent the request for a travel document to the Chinese Consulate promptly upon taking petitioner into custody, and the request remains pending subject to receipt of information from petitioner confirming his identity as a Chinese citizen.  There is nothing in the record before the court to indicate that Chinese authorities are inclined to deny the request upon receipt of the required information.

In addition, the available statistical evidence reveals that in recent years, DHS has successfully repatriated significant numbers of aliens to the People's Republic of China, indicating no institutional barriers to petitioner's removal.  For example,  DHS reports show that in fiscal year ("FY") 2010, a total of 1,060 aliens were repatriated to the People's Republic of China; in FY 2011, 1,025 aliens were repatriated to the People's Republic of China; and in FY 2012, 963 aliens were repatriated to the People's Republic of China.  *See* DHS Yearbook of Immigration Statistics: 2012, Table 41: https://www.dhs.gov/yearbook-immigration-statistics-2012-enforcement-actions.   These circumstances provide a reasonable basis for DHS's expectation that the verification required for the issuance of a travel document by the Chinese government can be accomplished within the reasonably foreseeable future following receipt of the citizenship information requested from petitioner, after which time the necessary travel arrangements may be made for petitioner's release from custody and his repatriation to the People's Republic of China.

Significantly, petitioner has provided no evidence to contradict this expectation, or to otherwise establish compliance with the requirements of the DHS regulations described above.  Instead, petitioner relies solely on the fact that his detention has exceeded the presumptively reasonable six-month period established in *Zadvydas*.  *See, e.g.*, Item 1,

¶¶ 14, 28, 32.  However, several cases decided within this district have found the habeas petitioner's assertion as to the unforeseeability of removal, supported only by the mere passage of time or the pendency of a request for a travel document, insufficient to meet the petitioner's initial burden to demonstrate no significant likelihood of removal under the Supreme Court's holding in *Zadvydas*.  *See, e.g., Khaleque*, 2009 WL 81318, at *4 (petitioner failed to meet initial burden where the only evidence relied upon was the fact that the Consulate had not responded positively to the request for a travel document); *Kassama v. Dep't of Homeland Sec.*, 553 F. Supp. 2d 301, 306-07 (W.D.N.Y. 2008) (petitioner failed to meet initial burden where there was no evidentiary proof in admissible form to suggest that travel documents would not be issued); *Haidara v. Mule*, 2008 WL 2483281, at *3 (W.D.N.Y. June 17, 2008) (petitioner failed to meet initial burden where he "merely ma[de] the general assertion that he will not be returned to [his country] in the foreseeable future"); *Roberts v. Bureau of Immigration & Customs Enforcement*, 2007 WL 781925, at *2 (W.D.N.Y. Mar. 13, 2007) (petitioner who did not present evidence that his country would not provide travel documents did not meet initial burden of proof); *Singh v. Holmes*, 2004 WL 2280366, at *5 (W.D.N.Y. Oct. 8, 2004) (petitioner who "failed to submit anything demonstrating that there is no significant likelihood of removal in the reasonably foreseeable future" did not meet initial burden of proof); *see also Juma v. Mukasey*, 2009 WL 2191247, at *3 (S.D.N.Y. July 23, 2009) (vague, conclusory and general claims that removal is not foreseeable, and that Embassy will not issue travel document in foreseeable future, fails to meet initial burden).

Based on this authority, and upon full consideration of the record presented by way of the parties' submissions, the court finds that petitioner has failed to meet his initial burden under *Zadvydas* to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future …." *Zadvydas*, 533 U.S. at 701. Accordingly, petitioner has failed to demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States" for the purposes of granting habeas corpus relief under 28 U.S.C. § 2241, and his petition must be denied.

## CONCLUSION

For the foregoing reasons, the petition is denied, and the case is dismissed. This dismissal is without prejudice to file another petition should it subsequently appear that the presumptively reasonable period of post-removal-order detention has elapsed, and that removal is no longer reasonably foreseeable. *See Andreenko v. Holder*, 2012 WL 4210286, at *5 (W.D.N.Y. Sept. 18, 2012); *Kassama*, 553 F. Supp. 2d at 307.

It is further ordered that certification pursuant to 28 U.S.C. § 1915(a)(3) be entered stating that any appeal from this Judgment would not be taken in good faith and therefore leave to appeal as a poor person should be denied. *Coppedge v. United States*, 369 U.S. 438 (1962).

The Clerk of the Court is directed to enter judgment in favor of respondent, and to close the case.

-14-

So ordered.

_____\\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:    June 9, 2015
p:\pending\2015\15-48.2241.june10.2015